**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 4 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

NORMAN WESLEY QUARLES,

    Defendant-Appellant.

No. 99-3007
(D.C. No. 98-CR-40044-01-RDR)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRORBY, EBEL**, and **LUCERO**, Circuit Judges.

---

Defendant-Appellant Norman Wesley Quarles appeals his conviction and
sentence on nine counts of federal drug offenses in the United States District
Court for the District of Kansas. Quarles argues that (1) the evidence produced at
trial was insufficient to convict him of conspiracy as alleged in Count 1 of the
indictment; (2) the district court erred in imposing the mandatory minimum

---

[*]After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G). This Order and
Judgment is not binding precedent, except under the doctrines of law of the case,
res judicata, and collateral estoppel. The court generally disfavors the citation of
orders and judgments; nevertheless, an order and judgment may be cited under the
terms and conditions of 10th Cir. R. 36.3.

sentence of twenty years pursuant to 21 U.S.C. § 841(b)(1)(A); and (3) the district court erred in using relevant conduct to determine the mandatory minimum sentence. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

BACKGROUND

The United States Department of Housing and Urban Development ("HUD") implemented "Operation Safe Home" in February 1994 to help federal, state, and local law enforcement officers identify, investigate, and prosecute individuals involved in the distribution of illegal narcotics in or near public housing areas. As part of that program, a paid informant was placed in the Jackson Towers public housing complex in Topeka, Kansas in July 1997. The informant lived in the apartment complex and was directed to associate with and identify those persons involved in illegal narcotics distribution. Special Agent Dave Hutchings of the Kansas Bureau of Investigation posed as the informant's brother who wanted drugs, and he was responsible for carrying out the drug transactions. Quarles, a resident of the building, and the informant soon became acquainted, and Quarles told the informant he could help her buy cocaine.

From August 1997 to March 1998, Quarles was involved in approximately sixteen drug transactions with Agent Hutchings. (See ROA, Vol. VI, at 89.) The present charges against Quarles concern nine of the transactions that occurred during that time period. The first of these transactions occurred on August 15,

1997, when Quarles sold Agent Hutchings 3.77 grams of crack cocaine for $300. (See ROA, Vol. VI, at 48.) Subsequent purchases of crack cocaine by Agent Hutchings from Quarles included the following: 3.51 grams on August 21, 1997; 1.72 grams on September 2, 1997; 2.17 grams on September 30, 1997; 2.97 grams on November 17, 1997; 3.0 grams on November 21, 1997; 3.57 grams on November 24, 1997; and 3.16 grams on December 5, 1997. (See ROA, Vol. VI, at 58, 62, 66, 70, 78, 82, 85.)

Evidence at trial indicated that Corey Williams participated in several of these transactions, and that Williams was the source of the crack cocaine Quarles obtained for some of the transactions. (See ROA, Vol. VI, at 74-76, 80-81, 83; Applt. Br. at 6-7.) After the December 5th transaction, Agent Hutchings began dealing with Williams directly, but he also continued dealing with Quarles. (See ROA, Vol. VI, at 88, 89.) Quarles brokered a number of additional purchases for Agent Hutchings through March 30,1998. (See id.)

On March 30, 1998, Agent Hutchings met with Quarles, Leroy Hudson, Jr., and an unidentified woman at the informant's apartment. (See ROA, Vol. II at 17.) Hudson produced a package of powder cocaine and Agent Hutchings complained that he wanted crack cocaine instead. (See id.) At that point, Hudson instructed Quarles to cook up the powder to make it into crack cocaine. (See id.) Quarles did so, keeping a portion of the crack for himself. (See id.) The crack

cocaine provided to Agent Hutchings on that occasion had a net weight of 26.32 grams.  (See id.)

Quarles was jointly indicted with Corey Williams on one count of conspiracy to possess with intent to distribute crack cocaine in violation of 21 U.S.C. § 846, and four counts of distribution of crack cocaine under 21 U.S.C. § 841(a).  He also was charged individually in the same indictment with four counts of violation of 21 U.S.C. § 841(a).  At the close of the evidence, the jury returned a verdict of guilty on all nine counts against Quarles.  Quarles received a mandatory minimum sentence of twenty years for the conspiracy charge and twenty years for the distribution charges, with the sentences running concurrently.

DISCUSSION

Quarrels raises three arguments on appeal.  We find each of his arguments to be without merit, and affirm.

A.  Sufficiency of the Evidence on the Conspiracy Charge

Quarles first contends that there was insufficient evidence to convict him of conspiracy under 21 U.S.C. § 846.  "In reviewing the sufficiency of the evidence to support a jury verdict, this court must review the record de novo and ask only whether taking the evidence–both direct and circumstantial, together with the reasonable inferences to be drawn therefrom–in the light most favorable to the

government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." United States v. Hanzlicek, 187 F.3d 1228, 1239 (10th Cir. 1999). "To find a defendant guilty of conspiracy in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846, the jury must find, beyond a reasonable doubt, (1) an agreement with another person to violate the law, (2) knowledge of the essential objectives of the conspiracy, (3) knowing and voluntary involvement, and (4) interdependence among the alleged conspirators." United States v. Carter, 130 F.3d 1432, 1439 (10th Cir. 1997).

The conspiracy charge against Quarles alleged that from approximately August 13, 1997 through March 30, 1998, Quarles and Corey Williams conspired with other persons, known and unknown to the grand jury, to possess with intent to distribute in excess of fifty grams of crack cocaine. (See Aple. Br. at 11.) Quarles claims that because the government did not present evidence that a conspiracy with Williams existed prior to September 2, 1997 or that it continued after December 5, 1997, the government did not prove the conspiracy charge beyond a reasonable doubt. (See Applt. Br. at 11-12.) Quarles further contends that the government charged only one conspiracy but offered evidence of multiple conspiracies. (See Applt. Br. at 13-14.)

Quarles' argument lacks merit because the indictment specified that the dates were approximate, and alleged that Quarles and Williams conspired with

others, known and unknown to the grand jury, during the relevant period. The government offered evidence that between August 1997 and March 30, 1998: (1) Quarles had agreements with Williams and others to possess with intent to distribute crack cocaine, (2) Quarles knew the objectives of the conspiracy, (3) Quarles was knowingly and voluntarily involved in the conspiracy, and (4) the conduct of the alleged co-conspirators was interdependent. This evidence was sufficient for a jury to find beyond a reasonable doubt that Quarles was guilty of the conspiracy charge.

At trial, Quarles pursued an entrapment defense, claiming the government coerced him into participating in the drug trafficking with which he was charged. His pursuit of that defense opened up his propensity to commit similar crimes, including evidence of cocaine powder transactions. United States v. Hawke, 505 F.2d 817, 821 (10th Cir. 1974). This evidence, however, is not part of the evidence that supports his conviction for conspiracy with respect to crack cocaine.

B. Imposition of a Twenty-Year Mandatory Minimum Sentence

Quarles next argues that the district court erred in imposing a mandatory minimum sentence of twenty years under 21 U.S.C. § 841(b)(1)(A), because: (1) uncharged and unproven quantities of different types of drugs were considered in determining his sentence; (2) the government engaged in outrageous conduct for

the purpose of manipulating his sentence; and (3) the amount of crack cocaine from the March 30th transaction should not have been considered for purposes of sentencing, because it was not foreseeable to Quarles that the powder cocaine would be made into crack cocaine.

With respect to sentencing issues, we review the district court's factual findings for clear error and its legal interpretation of the sentencing guidelines de novo. See United States v. Norman, 129 F.3d 1393, 1398 (10th Cir. 1997).

Under 21 U.S.C. § 841(b)(1)(A), a person who has a prior conviction for a felony drug offense and subsequently violates 21 U.S.C. § 841(a) by distributing, or possessing with intent to distribute, fifty grams or more of a substance containing cocaine base will receive a mandatory minimum sentence of twenty years. See 21 U.S.C. § 841(b)(1)(A). Quarles had a prior felony drug conviction in 1985 (see ROA, Vol. I, at 56); therefore, a violation of 21 U.S.C. § 841(a) for fifty grams or more of cocaine base would mandate that he receive a twenty-year sentence. The evidence indicated that Quarles was directly involved in the distribution of 23.87 grams of crack cocaine.[1] In addition, under the conspiracy charge, Quarles is accountable for the 26.32 grams of crack cocaine from the

---

[1] This amount is the total of the amounts involved in the transactions of August 15, 1997, August 21, 1997, September 2, 1997, September 30, 1997, November 17, 1997, November 21, 1997, November 24, 1997, and December 5, 1997.

March 30, 1998 transaction. These two amounts alone total 50.19 grams. Quarles' contention that he should not be accountable for the 26.32 grams because it was the result of sentence manipulation through outrageous government conduct is without merit. Quarles willingly converted the powder cocaine into crack cocaine. The crack cocaine was then delivered to Agent Hutchings. Quarles' contention that it was unforeseeable that the powder cocaine would be made into crack cocaine is similarly without merit. Quarles was not, as he asserts, a "mere 'tag-along'"; rather, he actively participated in the transaction by transforming the powder to crack cocaine. Thus, without even considering any of the evidence concerning uncharged and unproven quantities of drugs, the amount for which Quarles must be held accountable exceeds fifty grams. We therefore conclude that the district court properly found that the twenty-year mandatory minimum sentence applies.

C. Use of Relevant Conduct On Uncharged Drug Offenses for Sentencing

Quarles' final contention is that the government improperly used evidence of relevant conduct, as defined in U.S.S.G. § 1B1.3, concerning uncharged and unproven drug offenses in reaching the quantity of drugs required for the mandatory minimum sentence of twenty years under 21 U.S.C. 841(b)(1)(A). The district court adhered to our decision in United States v. Reyes, 40 F.3d 1148

(10th Cir. 1994), in overruling Quarles' objection to a calculation that took into account quantities from relevant conduct. Recently, however, we overruled <u>Reyes</u> in <u>United States v. Santos</u>, 1999 WL 694275 (10th Cir. Sept. 8, 1999). In light of overwhelming authority elsewhere, we held that the mandatory sentencing directives in 21 U.S.C. § 841(b) are governed solely by the drug quantities involved in the offense of conviction for which sentence is imposed. <u>See</u> <u>Santos</u>, 1999 WL 694275, at *4.

Any improper use by the government of relevant conduct in calculating the drug quantity for Quarles' sentencing does not change the result in Quarles' case, however. As discussed above, Quarles' accountability for a quantity in excess of fifty grams was proven at trial, irrespective of any evidence from uncharged offenses. Thus, any error by the district court in using such evidence was harmless.

For the foregoing reasons, we AFFIRM Mr. Quarles' conviction and sentence.

The mandate shall issue forthwith.

ENTERED FOR THE COURT


David M. Ebel
Circuit Judge